Ms. Piazza's testimony alone, compared to her direct examination versus her cross-examination, that I would submit that the arbitrator was in error in making that finding. I think that, again, that the whole purpose behind her testimony is that it contradicted itself. She said, my employee is very timely, very efficient in attending to customers, yet she also admitted on cross-examination that she installed the buzzer because there were customers who were waiting 15 minutes to be attended to by a service agent. So, again, her testimony is inconsistent with itself. I submit that waiting 15 minutes to be serviced by an agent isn't very efficient. And I submit that she installed the buzzer because she wanted them to get to that service counter as quickly as possible, and I would submit that her testimony is less credible than Mr. Gentzen's, and that she did use the word jump. Get to the front counter as quick as you can. But she makes the credibility findings. We don't make the credibility findings. They found him incredible. They found her credible. So for the purposes of this appeal, she never told him to jump up. The question becomes, getting up out of the chair and turning the chair, does that arise out of the course of the employment? The arbitrator found, the commission adopted, the notion that he was not subjected to any hazard greater than that to which the general public is subjected. If that's the case, then it doesn't arise out of it. So you've got to go after the finding that he wasn't subjected to a hazard greater than general public. What's so hazardous about getting up out of a chair? I'm sorry? What's so hazardous about getting up out of a chair? Well, again, I would submit that the hazard itself, the increased risk of injury that he was exposed to, was that he's on this raised chair with the wheels swiveled around, and he's put in a workstation where it's necessary for him to turn and twist every time a customer comes in and serves them. That's the increased risk. I submit that it's the same situation as in O'Fallon. Wouldn't it be more of an increased risk if he was not in a swivel chair and was back to a service counter so that he has to twist oftentimes not just his body, but also a chair? I would submit being on a raised chair. I mean, if you had a choice, what would you choose? A swivel chair or a stationary chair if you're in that configuration? What's going to be less stressful to a person getting up and turning around? I would agree that a swivel chair would be less stressful than a stationary chair. And this testimony about jumping, he wasn't injured when he was – he didn't jump, did he? Well, he jumped out of his chair. I mean, that's – That's his testimony. That's his testimony. That he jumped out of a chair. Right. And it was this motion, and as the records confirm in there, it's the motion that he was – the records will support that he twisted as he jumped out of his chair, and that's when he sustained the injury. The medical records, the most contemporaneous medical records, support that he jumped out of his chair, got out of his chair and twisted, and that's when he sustained this injury. That's June 12th at FedEx's facility, St. Teresa's Medical Facility. That's the exact history contained on the date of the accident. Your time is up. Thank you. Counsel, please. May it please the Court, I am Kurt Hansen on behalf of the appellee and respondent at Federal Express. I think the most important thing I can say to you here today is that the factual determination in this case is not against the manifest weight of the evidence. There were disputed questions of fact, and based on the available evidence, the Commission should have found the way they did, that the petitioner, or the claimant, I'm sorry, failed to prove a compensable accident. Counsel, one question I'd like you to ask. I think it's fairly clear that the mere fact of getting out of a chair at work is not the type of activity that creates a risk of injury that's over that common to the general public. But he does raise a point. Why did the, why was the claimant required to be in a position where his back was to the service counter? Why was that necessary? It would seem to me, if you want to wait on a customer more promptly, wouldn't you want to face where the customers are coming in, as opposed to having your back to where the customers come in? What's the logic in that? You know, I think if you look at the testimony of Mr. Chiasi, you can see that the claimant wasn't the primary counter person, where the people came in and received the different people. But there were some times when he was there by himself. But he did mainly tracking on his computer work, and it was consistent with his permanent restrictions that he had. So he wasn't getting up and down all day waiting on customers. But they wanted to make sure they had a buzzer there so that if somebody came in, they'd be waiting on it at some point, and that would alert them. But it wasn't as if he was stationed there all the time, so every time somebody came up, he had to jump up. Because most of the time, he wasn't the person getting or servicing the customer. Again, something in the record as to the frequency at which the particular claimant had to go to the service counter in the course of the day, there was no evidence to establish that. Not specific numbers, other than the fact that Ms. Piazza testified that he wasn't the primary person, so he rarely did it, actually. So he wasn't constantly jumping up? No. It wasn't part of his duties, if you see her testimony. I'd like to state further, I think it's significant that the commission did question the claimant's credibility, and they rejected his multiple, ever-evolving histories of injury. I think you see over time in the different records that sometimes he claims he was lifting, didn't mention anything about getting out of a chair. Initial histories, of course, said he was simply arising from a chair. But then later on, actually about four years later, he said that he had to jump out of his chair, and he was instructed to do so, but the arbitrator did not believe that contention. I think the arbitrator, looking at all the available evidence, found it best that the claimant experienced pain when he was arising from a chair, and that this was not an occupational hazard. Further, I'd like to state, I don't think this case involves a question of law, as set forth by the claimant's attorney. There's not one set of facts in this case to which everyone agrees. The facts were disputed, and the claimant's reliance on various cases is incorrectly based upon the facts as he sees them, not as the way the commission found the facts. O'Fallon, I don't think is on point. Now, O'Fallon, I believe the arbitrator denied compensation, but the commission reversed it and did award compensation. So that wasn't changed by the circuit court or the appellate court. But O'Fallon, I think, involves a case where number one, there's no factual disputes, and number two, I think it's a case of hot pursuit. But in this case, there's really no evidence of any urgency for the petitioner, at least that the arbitrator believed when he had to get out of the chair. The issue here today really is could the commission have made the factual determination that they did, based upon the available evidence, and if so, this reviewing body should not overturn that decision. Here, the commission and the arbitrator weighed the available evidence and made findings of credibility and findings of fact, and we would submit that this court should not overturn those findings. Based on this, the appellee and respondent federal express respectfully request that this honorable court affirm the decision of the circuit court, the commission, and the arbitrator. Thank you. Thank you, Counselor Boehme. Just briefly, Your Honors, I just want to focus on the issue of law in this case. I do submit to you that the question was asked about how many times. Again, I would still focus on the fact pattern as it was in O'Fallon. It was a one act, one activity in which a teacher turned, twisted to attend to that student that was running down the hall.  In this case, people don't chase kids down hallways. I mean, that activity was peculiar to the appointment. People get up out of chairs all the time. You can establish that a neutral risk is compensable either qualitatively or quantitatively. There's absolutely no evidence in this case as to the number of times he got up, so you can't establish it quantitatively. You've got to establish it qualitatively. In O'Fallon, it was established qualitatively. People don't chase kids down the hallway. That's not their normal routine. People get up and down out of chairs every day everywhere. So the question becomes, if it's not some hazard peculiar to the appointment, as it was in O'Fallon, then how does it become compensable as a rising outcome? I would submit that it was peculiar to his appointment. The fact that the way the workstation was set up is peculiar to his appointment. He's just not simply arising out of a chair to stand up. He's arising out of a chair, twisting and turning to get to the front counter desk at the direction and immediately at the direction of the supervisor. I think that is where the increased risk arises. That is a risk peculiar to his employment, and this occurred in the furtherance of his employment for FedEx. What about the counsel's argument that, generally speaking, the claimant was not a primary person who was called upon to wait on the counter? It was not his general responsibility to do that. It was one of his responsibilities, among other responsibilities, and there were multiple workers, multiple responsibilities. But it was one of his responsibilities, as even his supervisor testified to, to attend to the customers. Why was there no evidence solicited before the commission as to the frequency at which the claimant had to get out of his chair? Wouldn't that have been relevant? I believe it may have been, but, again, I think that the issue in this case is, again, Again, I don't believe that it's necessary that it happened the first time in the day, the first customer, or the 50th time in the day, because it was one specific act in which he injured himself. It wasn't a repetitive type injury. It was one specific act in which he injured himself. So I don't believe that, as he had mentioned, that quantitatively it's necessary, because it was one specific act that caused the injury, one specific time. And, again, I think it was the increased risk, the peculiar nature of the setup of the workstation that caused the injury. Thank you, counsel. Thank you, Your Honor. The court will take the matter under advisory for disposition.